BUCKNER (TAYLOR v.). See Case No. 13,-782.

---

## Case No. 2,099.

BUCKNOR et al. v. The GILBERT GREEN.

[12 Leg. Int. 326.]

Circuit Court, E. D. Pennsylvania. 1855.

SHIPPING—PERILS OF THE SEA—DAMAGE TO CARGO —REMEDIES.

[1. A vessel on her first voyage, which encounters no unusual gales or stress of weather, but takes to leaking spontaneously, and whose bottom on examination, discloses an open knot hole and a loose tree-nail, is unseaworthy; consquently, injury to her cargo from the leak is not caused by perils of the sea.]

[2. Where a general bill of lading is given, but separate bills are delivered to the owners of the cargo for their respective portions, the several holders thereof may libel the vessel for damages to the cargo, though the consignment is to one party in bulk.]

[In admiralty. Libels by Bucknor and others, owners of separate portions of the cargo of the schooner Gilbert Green, to recover damages for injury to the cargo. Decree for libellants.]

Wm. A. Porter, for libellants.
R. P. Kane, for respondents.

GRIER, Circuit Justice. That the tobacco shipped on board the Gilbert Green for the several libellants in these cases, was not delivered in good order, but on the contrary, was greatly injured by the leakage of the vessel, is conceded by the pleadings. The master of the schooner, who is also part owner, has endeavored to establish a defence on two grounds: 1st. That the vessel was sea-

worthy, and the leak which injured the tobacco was caused by the perils of the sea. The Gilbert Green was a new vessel. This was her first voyage. The builders of course all swear she was everything that a vessel ought to be, or could be made to be, and from this evidence the respondents draw the inference. that ergo the leak must have been caused by the perils of the sea. This might be a legitimate inference if the vessel had been shown to have been in any unusual peril of the sea, which might account for the leak. But in this case the contrary appears to be the case. The schooner encountered no unusual gales or stresses of weather, but took to leaking spontaneously.—When her bottom is examined, after the cargo was discharged, it is found to have an open knot hole and a tree-nail so loose that it could be pushed out with a finger. The leak was obviously not caused by stress of weather, but by unseaworthiness, consequent in the carelessness and negligence of those who built the schooner. The rule of maritime law, that the vessel is bound to the cargo and the cargo to the vessel, is not disputed, but the respondents have contended:

2dly. That his contract to carry was with M. W. Chapin & Co., to deliver 218 cases of tobacco to Baird & Co., in Philadelphia, as consignees. Where the proceeding is in rem against a vessel on her implied contract with the goods, the action is not brought on the covenants in the bill of lading. The owner of the goods or cargo is the proper party where the cargo proceeds against the vessel on their implied mutual hypothecation. Where the master who acts for the vessel, and binds her by his contracts, is wholly ignorant of a number of secret owners, and knows no one but consignor and consignee, he would have a right to complain if numerous suits should be instituted on his one contract. It is against the maxim of the law, "ne in plures adrusarsos distingratue qui cum uno contraxerit." The consignee or consignor might maintain a suit both in admiralty and in a common law court. on the special right of property conferred, by the bill of lading on the consignee, and by virtue of the contract with the consignor. That cannot be denied. But where a portion only of the freight is injured and resort is had to the implied contract of hypothecation between goods and vessels, and the lien consequent thereon, I am not prepared to say that the several owners of the goods may not proceed in their own names against the vessel. The court would of course protect the vessel against oppression by a multitude of adversaries. But it is unnecessary on the facts of the present case to decide the point. Although a general bill of lading was signed, as set up in the answer, it was for the captain's convenience only, and separate bills of lading were signed to each of the libellants for their respective portions of the cargo, and delivery made to them. These bills,

though not actually signed by the master, were signed by another for him, and at his request. There was, therefore, an actual several contract made by the master with each of the two owners of the tobacco.—The respondent has therefore wholly failed in his defence, and the several libellants are entitled to a decree for their damages.